IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUIS COBARRUBIA,

    Plaintiff,

v.                                                Case No. 22-cv-0194 MV-GBW

KEEFE GROUP, LLC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on Defendant's Motion to Dismiss or for a More Definite Statement (Doc. 2) (Motion). Defendant, a prison commissary provider, argues that Plaintiff's *pro se* Prisoner Complaint for Violations of the Unfair Practices Act and Price Discrimination Act (Doc. 1-1) (Complaint) fails to state a cognizable claim and/or provide sufficient facts. Having reviewed the matter under 28 U.S.C. § 1915A and Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will deny the Motion, in part, and direct Defendant to answer certain the cognizable claim.

**I.    Background**

    Plaintiff is currently incarcerated at the Lea County Correctional Facility ("LCCF"). *See* Doc. 1-1 at 4. Defendant Keefe Group, LLC sells Android tablets to the inmates at LCCF. *Id.* Plaintiff purchased a tablet, which contains an application (or "app") called Media Store. *Id.* The Media Store app states that the price for each song is $1.70. *Id.* The Media Store app further states that the price "includes [the] content price, download fee, taxes, and commission." *Id.* Inmates purchase media time from the commissary, which they can use to download music. *Id.* To purchase songs, the inmates must place their selection in the Media Store app's shopping cart and then

connect the tablet to a kiosk within LCCF. *Id.* Any music in the inmates' shopping cart is automatically downloaded upon connecting the tablet to the kiosk, assuming that the inmate has sufficient funds to cover the purchase. *Id.*

Plaintiff purchased about 2,622 songs through the Media Store app. *See* Doc. 1-1 at 4. He alleges that he is charged $1.90 for each song, rather than the advertised price of $1.70. *Id.* Plaintiff states that he cannot request a refund, although the reason is unclear. *Id.* The Complaint further alleges that Defendant pays the New Mexico Corrections Department ("NMCD") a commission on all sales of tablets, media time, commissary goods, and prepaid phone credits. *Id.* NMCD purportedly does not provide a service in connection with the sales but acts as an agent on behalf of the inmates.

Based on these facts, Plaintiff raises claims under New Mexico's Unfair Practices Act, N.M.S.A. § 57-12-1, *et. seq.*, ("NMUPA") and New Mexico's Price Discrimination Act, § 57-14-1, *et. seq.* ("NMPDA"). He seeks at least $786,000 in damages from one Defendant: Keefe Group, LLC. *See* Doc. 1-1 at 3. Plaintiff originally filed the Complaint in New Mexico's Fifth Judicial District Court. *Id.* Defendant removed the Complaint to this Court based on diversity jurisdiction and filed the instant Motion to Dismiss. *See* Doc. 1 (citing 28 U.S.C. §§ 1332, 1441(b)); Doc. 2. Plaintiff filed a response (Doc. 3), and the matter is ready for review.

**II.     Standard of Review**

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must

accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). As *Iqbal* explained:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

Where, as here, the defendant seeks a more definite statement, relief is only available when the pleading "is so vague or ambiguous that a party cannot reasonably" craft a response. Fed. R. Civ. P. 12(e); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (3d ed. 2022) (Rule 12(e) applies when the pleading is "so vague or ambiguous that the opposing party cannot respond—even with a simple denial—in good faith, without prejudice to him [or her]self"). "Motions for more definite statements under Rule 12(e) ... are generally not favored by the courts because of the liberal pleading requirements embodied in Rule 8(a)." *Mullins v. I. C. Sys., Inc.*, 2007 WL 1795871, at *2 (D. Colo. June 21, 2007). "If the opposing party is able to determine the issues he [or she] must respond to, the pleading is sufficient." *Id.*

3

Finally, because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, …, or … unfamiliarity with pleading requirements." *Id.* Moreover, if the initial complaint fails to state a claim, courts should generally grant leave to amend unless amendment would be futile. *Id.*

## III. Discussion

Construed liberally, the Complaint raises claims for deceptive pricing under the NMUPA and price discrimination/unlawful commissions under the NMPDA. The Court will address each claim below.

### A. The Complaint States a Claim Under NMUPA

The NMUPA makes "unfair or deceptive trade practices … in the conduct of any trade or commerce" unlawful. N.M.S.A § 57-12-3. Generally, the NMUPA is designed to "provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1096 (N.M. App. 2007). *See also Diversey Corp. v. Chem-Source Corp.,* 965 P.2d 332, 338 (N.M. App. 1998) ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services.").

To state a claim under the NMUPA, the plaintiff must allege: "(1) [the] defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the

4

representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *Lohman*, 166 P.3d at 1093. "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311–12 (N.M. 1991).

Construed liberally, the Complaint alleges that Defendant sold a device for purchasing music as part of its commissary service, knowingly advertised the price for each song as $1.70, and instead charged inmates $1.90 per song. The Complaint further alleges that the advertised price purports to include "content price, download fee, taxes, and commission," suggesting that there may not be a legitimate reason for the higher price. Doc. 1-1 at 4. Accepted as true, the allegations show that Defendant falsely advertised the price of music downloads to inmates, in the course of its commissary business, and in a way that would mislead the average person. The Complaint therefore states a claim under the NMUPA.

Defendant argues that Plaintiff should provide a more definite statement, at a minimum, because the Complaint does not include facts relevant to the statute of limitations and other defenses. Defendant also notes that the Complaint does not delineate the elements of Plaintiff's claims, identify what advertisements existed or how they were false, or identify the date of any music purchase. As to the statute of limitations, courts can require a more definite statement "when a specific date could support a dispositive defense motion." *Casanova v. Ulibarri*, 595 F.3d 1120, 1125–26 (10th Cir. 2010). However, such requests can be denied when the "matter sought is a proper subject for discovery" or where "the movant has knowledge of the information sought." *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 at

5

336 (3d ed. 2004) and 2 James Wm. Moore, Moore's Federal Practice ¶ 12.36[3] (3d ed. 2009)). Plaintiff contends that his new tablet does not reflect the date of all prior purchases. *See* Doc. 3 at 3-4. He further alleges that Defendant, as the commissary provider, can access that information. *Id.* The Court agrees that Defendant is likely better situated to access records regarding inmates' media purchases. The Court therefore declines to require Plaintiff to provide dates at the pleading stage.

With respect to Defendant's remaining arguments, the Court is not convinced that Plaintiff's allegations are so vague or ambiguous that it is impossible to respond. The nature of the advertisement seems reasonably discernable. It appears that the Media Store app lists a price per download, which is lower than the amount deducted from Plaintiff's commissary account. Plaintiff's failure to list the relevant subsection of each statute is also not fatal. As noted above, courts must overlook a *pro se* plaintiff's "failure to cite proper legal authority [and] … confusion of various legal theories." *Hall*, 935 F.2d at 1110. And, in any event, Plaintiff clarifies the specific subsections of each claim in his response to the Motion. *See* Doc. 3. Courts may consider clarifying details contained in a response, provided that such details do not amplify the allegations in the complaint. *See, e.g., Casanova*, 595 F.3d at 1125–26 (district court erred in dismissing a complaint where plaintiff "provided the date of the incident in his response to [defendant's] motion to dismiss").

For these reasons, the Complaint states a cognizable claim under the NMUPA. The Court declines to dismiss any NMUPA claims or require a more definite statement.

**B. The Complaint Fails to State a Claim Under NMPDA**

The Complaint also seeks damages for violations of the NMPDA. The NMPDA is "state antitrust legislation … to promote the public interest in a competitive economy … by preventing monopolistic practices and conduct restraining trade." *Jay Walton Enterprises, Inc. v. Rio Grande Oil Co. of Bernalillo Cnty.*, 738 P.2d 927, 929–30 (N.M. App. 1987). The NMPDA prevents a "business from destroying competition through unfair pricing practices, such as, for example, depressing prices in one locality where there is competition and offsetting the loss by raising prices in another area where there is little or no competition." *Id.* The NMPDA also prevents "practices designed to hinder free competition between parties, or to discriminate between customers on terms not accorded to all purchasers on substantially equal terms." *Id.* The NMPDA "closely parallels the Robinson-Patman Act, adopted by Congress as an amendment to the Clayton Anti-Trust Act, 15 U.S.C. Section 13 (1976)." *Id.* Courts "look to the federal law [on the Robinson-Patman Act] for assistance" in interpreting the NMPDA, *see id.,* as there is very little state case law interpreting the antitrust legislation.

To state a claim for price discrimination under § 57-14-3 of the NMPDA, a plaintiff must allege that the defendant engaged in commerce and, "for the purpose of destroying competition or eliminating a competitor," discriminated in price between: (1) different purchases of similar goods; or (2) different geographic areas where the effect is to lessen competition. N.M.S.A. § 57-14-3. The Complaint does not contain facts addressing this subsection of the NMPDA. Plaintiff has not alleged that Defendant attempted to eliminate a competitor, nor are there facts showing that songs were sold at a different price to any other purchaser or in any other location. The first circumstance would be difficult to show, as there is typically only one commissary provider per prison.

Accordingly, the Complaint fails to state a claim for price discrimination under § 57-14-3.

Based on the response to the Motion, it appears that Plaintiff primarily raises a NMPDA claim under § 57-14-5. That section, titled Commissions and Brokerages, is similar to subsection (c) of the Robinson-Patman Act. It states as follows:

> It is unlawful for any person engaged in commerce to pay, grant, receive or accept anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares or merchandise. It is unlawful for either party to the transaction to pay or grant anything of value as a commission, brokerage or other compensation, or any allowance or discount to the other party to the transaction or to any agent, representative or other intermediary acting for, on behalf of or subject to direct or indirect control of the other party to the transaction.

N.M.S.A. § 57-14-5.

There is no New Mexico or Tenth Circuit case law interpreting this section. The authority interpreting the similar subsection of the Robinson-Patman Act clarifies that this language primarily targets "dummy brokerages." *See* 54 Am. Jur. 2d Monopolies and Restraints of Trade § 197 (2d. Ed. 2023); *Env't Tectonis v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1066 (3d Cir. 1988) ("Congress enacted [the provision] primarily to curb one particular abuse by large chain store buyers, namely the use of 'dummy' brokerage fees as a means of securing rebates."). "A dummy broker is a fiction, set up by the buyer, that renders no services and yet collects a 'brokerage' fee from the seller. The fictitious broker then pays the fee to its employer, the buyer." *Hix Corp. v. Nat'l Screen Printing Equip. Inc.*, 108 F. Supp. 2d 1204, 1206 (D. Kan. 2000) (citing *Bridges v. MacLean-Stevens Studios, Inc.*, 201 F.3d 6, 10 (1st Cir. 2000)). Said differently, the provision "prevents large buyers from obtaining indirect price discrimination by demanding that the suppliers pay fees to bogus brokers, which fees would then be returned to the buyers." *See* 54 Am. Jur. 2d Monopolies and Restraints of Trade § 197 (2d. Ed. 2023).

Beyond dummy brokers, the provision has been interpreted to cover "all other means by which [commissions or] brokerage could be used to effect price discrimination." *F.T.C. v. Henry Broch & Co.*, 363 U.S. 166, 169 (1960). This includes commercial bribery or other illegal payments. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 223 (2d Cir. 2004) ("The *sine qua non* of a … violation is an improper payment"). *See also California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513 (1972) ("bribery of a public purchasing agent" could violate the prohibition on price discrimination through a commission/brokerage scheme). However, such illegal conduct must still violate the prohibition on price discrimination, meaning it must threaten an injury to competition. *See Nirvana, Inc. v. Nestle Waters N. Am. Inc.*, 123 F. Supp. 3d 357, 372 (N.D.N.Y. 2015) (citing the corollary to § 57-14-5 in the Robinson-Patman Act and noting that, to "trigger the protection" of this section, "a plaintiff must allege a price discrimination that threatens injury to competition because mere price differences … are not banned").

Plaintiff's Complaint alleges that: (1) Defendant is the exclusive seller of commissary items; (2) Defendant pays NMCD a commission on all sales to inmates; (3) NMCD acts as an agent to the inmates; and (4) NMCD does not provide a service in connection with Defendant's commissary sales to inmates. Such allegations do not show use of a dummy brokerage, a bribe, or other illegal payment. And, even if the commission payments were somehow improper, the allegations do not show that any commission to NMCD can "be used to effect price discrimination," *i.e.,* that it causes an injury to competition. *Broch*, 363 U.S. at 169 (1960); *Nirvana,* 123 F. Supp. 3d at 372. The Complaint therefore fails to state a claim for price discrimination under §§ 57-14-3 or 57-14-5 of the NMPDA.

9

Based on the foregoing, the Court will order Defendant to answer the Complaint, to the extent that it raises claims under the NMUPA. The Court will also grant Defendant's Motion in part, to the extent that it seeks dismissal of Plaintiff's claims under the NMPDA. *Pro se* inmates are often invited to "remedy defects potentially attributable to their ignorance of federal law" through an amendment. *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). However, courts are not required to *sua sponte* invite an amendment where the claim would also be subject to dismissal under Rule 12(b)(6). For the reasons above, Plaintiff cannot state a claim under antitrust law because he was overcharged for music in prison. The Court therefore declines to *sua sponte* invite an amendment with respect to the NMPDA claim. The Court notes that the dismissal of Plaintiff's NMPDA claim does not count as a strike for purposes of 28 U.S.C. § 1915(g). *See Woodson v. McCollum*, 875 F.3d 1304 (10th Cir. 2017) (three-strikes rule does not apply in a removed case).

After entry of this ruling, the case will be referred to the assigned Magistrate Judge for a *Martinez* investigation, if appropriate. *See Martinez v. Aaron,* 570 F.2d 317, 318-19 (10th Cir. 1978). *Martinez* calls for "a court-authorized investigation and report" in lieu of discovery where the plaintiff is incarcerated and proceeding *pro* se. *Hall*, 935 F.2d at 1109. The report is used to evaluate the "factual or legal bases for [the] claims" and will be required by separate order, if appropriate, after the answer is filed.

**IT IS ORDERED** that Defendant's Motion to Dismiss or For a More Definite Statement (**Doc. 2**) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant shall **ANSWER** the Complaint (Doc. 1-1) within thirty (30) days of entry of this Order, to the extent that it raises claims under the New

Mexico Unfair Practices Act, N.M.S.A. § 57-12-1, *et. seq.*;

**IT IS FURTHER ORDERED** that all claims under New Mexico's Price Discrimination Act, §§ 57-14-3 and 57-14-5, are **DISMISSED**.

_____
HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE